## Barnes & Tucker Co. v. Bird Coal Co. et al.

*Clark & Young*, for plaintiff.
*Saul, Ewing, Remick & Saul*, for defendants.

GORDON, JR., P. J., June 6, 1938.—The matter now before us involves two bills in equity to which preliminary objections have been filed by defendants. The bills arise out of the same transaction, raise substantially the same

questions, and, for convenience, may be treated as a single bill by the plaintiff corporation against the various defendants named in the bills. The proceeding is for an accounting of the profits derived from the sale of upwards of a million and a quarter tons of coal between the years 1928 and 1930 by the Bird Coal Company, one of the defendants, to the Public Service Electric Company of Newark, N. J., and which were distributed by the Bird Coal Company in the form of dividends on its stock, to John Barnes, deceased, who was the owner of the entire outstanding stock of that company. The principal objection to the bills is upon the ground that they are barred by the laches of plaintiff company in bringing the action, and, as we are of opinion that this objection is well taken, we will consider only the averments of the bill that bear upon and control that question.

When Thomas Barnes died in 1911, he was the owner of the entire stock of the Barnes & Tucker Company, plaintiff, a corporation engaged in mining and selling bituminous coal. By his will he created a trust of that stock for various descendants, naming his son, John Barnes, as trustee, and providing that the trustee should elect himself president of the company. This was done, and John Barnes held the presidency of the company, and as such was in exclusive control of its affairs and the management of the trust until he died in 1930. In 1923 Barnes & Tucker Company entered into a contract to sell ten million tons of coal, at the rate of one million tons a year, to the Public Service Electric Company of Newark, N. J. The contract also provided that, if plaintiff should be at any time unable to deliver the required amount of coal because of strikes in the industry, its failure to do so for that reason should not be considered a breach of the contract. Plaintiff delivered coal in accordance with its contract until April 1927, when a strike affecting plaintiff occurred in the industry, which continued until April of the following year, and during that period plaintiff was unable to deliver coal under its contract with the elec-

tric company. Barnes was also president and sole owner, in his own right, of the entire stock of the Bird Coal Company, one of the defendants, which was in a different coal field and was not affected by the strike. He therefore caused the Bird Coal Company to sell its own coal to the electric company to the amount called for by the latter's contract with Barnes & Tucker Company. When the strike ended in 1928, and the Barnes & Tucker Company was again in a position to deliver coal under its contract, Barnes, instead of resuming selling Barnes & Tucker coal to the electric company, continued to sell Bird Company coal to it until his death in 1930. This resulted in large losses to plaintiff and large profits to the Bird Coal Company, which were reflected in the dividends of the latter company which Barnes personally received because of his ownership of all its stock. These profits are averred in the bills to have amounted to upwards of $900,000, and are the subject of the accounting asked for in these proceedings. No complaint is made respecting the sale of Bird Company coal instead of Barnes & Tucker Company coal during the year of the strike, but it is averred that, after the strike was ended, plaintiff was in a position to fully perform its contract with the electric company, and that plaintiff and the trust, represented by Barnes' ownership as trustee of its entire stock, were defrauded by this abuse by Barnes of his controlling position in both companies. Each company during the period of Barnes' activities had the same directors, occupied the same offices, and the books and records of each were kept by the same persons. It is conceded that the handling of the affairs of the two companies by Barnes described above was wrongful and a betrayal of his duty as officer and trustee, and rendered him personally liable for the losses thereby occasioned to plaintiff company and the trust.

When John Barnes died on July 3, 1930, the management and control of the two companies was severed, and the Barnes & Tucker Company resumed delivery of coal

under its contract with the electric company. On the death of Barnes, his sister, Miss Rachael Barnes, became president of the Barnes & Tucker Company and trustee of the trust created by Thomas Barnes, and continued as such until her resignation on December 24, 1936.

By John Barnes' will, he created a trust of all his holdings in the Bird Coal Company, the executors and trustees named in the will being defendants William C. Fownes, Jr., and the Girard Trust Company. His widow, Amy F. B. Schaeffer, ultimately took the equivalent of her dower interest in the estate which included one third of the Bird Coal Company stock, the balance of which is now held by the aforesaid trustees. In due course, Barnes' estate was settled, and, by decree of the Orphans' Court of Delaware County dated December 29, 1931, was formally distributed, the trustees of the Bird Company stock receiving it in accordance with the terms of the trust.

The bill indicates that, while Miss Rachael Barnes was president of plaintiff company and trustee of its stock, she took no part, because of her inexperience in business matters, in the actual management of the affairs of the company and of the trust, and knew nothing of her brother's misconduct as officer and trustee in the matters here complained of, until after she resigned in 1936. The bills aver that, for this reason, no action was taken during her nominal control of plaintiff company and of the trust estate to recover from the estate of John Barnes for his mismanagement of the affairs of plaintiff which resulted in such great losses to it and to the trust under which its stock was held. The bills aver that, on the resignation of Miss Barnes as president of plaintiff company, on December 24, 1936, John Barnes Mull became president, and that "while examining into the tonnage of coal shipped by plaintiff company to the Public Service Electric Company under the contract of April 20, 1923, he accidentally discovered the diversion of tonnage to Bird Coal Company, and that this was the first knowledge of such diversion had by any officer of the company since

the death of John Barnes". The two proceedings before us were then brought by plaintiff company. One bill is against the estate of Barnes, the trustees of the trust of the Bird Coal Company stock created by his will, and the estate of his widow who took against his will and has since died; and the other bill is against the Bird Coal Company itself.

The theory upon which the suits are brought is that Barnes took advantage of his ownership and control of the entire stock of both companies, in the one case his ownership being personal and in the other as trustee, to divert to himself the large profits from the sale of a million tons of coal a year which, after the strike had ended in 1928, the Barnes & Tucker Company was in position to sell to the Public Service Electric Company, and which, had it done so, would have pro tanto enriched plaintiff company and the trust under which its stock was held. All parties to the litigation concede that Barnes' conduct was unlawful and breach of his duty both as a trustee and as an officer of the Barnes & Tucker Company. For the president of a corporation to fail deliberately to carry out a valuable contract which his company has, in order to enable himself to perform it personally, is a wrong to the company and to its stockholders, and for the losses occasioned thereby he can be held responsible. This is not disputed. Defendants contend, however, that the actions are barred by the gross and manifest laches of plaintiff, and that, even if the suits were not barred by laches, plaintiff's right of action would be only for damages for Barnes' wrongful acts, the measure of which would be the profits the Barnes & Tucker Company would have made out of its contract with the electric company, and not for an accounting of the profits actually made by the Bird Coal Company from the sale of its own coal to the electric company. Both of these contentions are, in our judgment, sound. Barnes died in 1930. His estate has been settled and distributed for over six years. As will be pointed out hereafter, his wrongdoing was not an em-

bezzlement or misapplication of trust property, for the dividends which he received from the Bird Coal Company stock, based on the profits it made on the sale of its own coal, never belonged to the Barnes & Tucker Company or to the trust of its stock. There was nothing, therefore, for which either Barnes or his estate can be required to account: No corporate or trust property is traceable into his hands. His misconduct was tortious in character, and, for the injury he inflicted upon plaintiff by his nonfeasance rather than misfeasance, he could have been held liable in damages. But we see nothing in the circumstances of the transaction which would support a demand for an accounting. Plaintiff had nothing but a right of action for damages against him, and, after his death, against his estate, which has been lost by the running of the statute of limitations.

For the same reason, the laches of plaintiff company in asserting its rights bars the present proceedings. When Barnes died his official successors in the management and control of the corporation had its records in their possession, a prompt inspection of which would have disclosed the company's failure to perform its contract. Indeed, the very fact that the president of plaintiff company, who succeeded Miss Barnes in 1936, immediately discovered the misconduct of John Barnes, discloses how readily a like inspection of the books of the company immediately after his death would have disclosed it. While we are not disposed to criticize Miss Barnes for her failure to discover her brother's wrongdoing, in applying the statute of limitations consideration cannot be given to the reason for the failure of a plaintiff to discover that which manifestly could be ascertained by a simple inquiry into the circumstances. Nothing will toll the running of the statute except active concealment by a defendant of the evidences of his wrongdoing, and the bills before us utterly fail to aver such affirmative concealment by Barnes as would have tolled the running of the statute or excuse the laches of plaintiff in this case.

The remaining preliminary objections are not, in our opinion, well taken. We think that the unique and dominating position occupied by John Barnes in the management and control of the affairs of both the Barnes & Tucker Company and the Bird Coal Company, and which enabled him, during his lifetime, to engage without detection in the wrongful practices here complained of, renders the Bird Coal Company responsible, as a party to the wrong done plaintiff company, to the same extent that Barnes himself was liable. The officers, directors, employes, and even the places of business of both companies were identical, and everyone connected with the Bird Company, stockholder, officer, and agent, was fully cognizant of Barnes' wrongdoing and an aider and abettor in his betrayal of his trust. For these reasons the preliminary objections based upon the theory that the Bird Company as such committed no wrong to plaintiff in selling its own coal to the Public Service Electric Company are untenable, and cannot be sustained. These objections are, therefore, overruled.

We are also of opinion that the preliminary objections based upon the contention that plaintiff cannot claim the acts of its president to have been unauthorized and wrongful with respect to it, because the ownership of all its stock was vested in the officer who committed the alleged wrongful acts, are without merit. While it is true that an act of an officer of a corporation which is expressly or impliedly authorized by all of its stockholders is not legally wrongful as to them and the corporation, we think this general rule is not applicable to a case in which the single stockholder holds the stock in a fiduciary capacity, and in which the act he commits as officer of the corporation is not only in fact wrongful and injurious to it, but is also a breach of his duty as trustee of the stock. His ownership of the stock in such a capacity confers no authority upon him to be faithless to his trust, and to use the power which that ownership gives him to neglect the interests entrusted to his safe-keeping. Barnes could not,

542

by consenting to his own misconduct, destroy the right of action thereby created in those whom he betrayed. The preliminary objections upon this ground are also overruled.

The first preliminary objection of each of the defendants, and the second and third objections of defendant Bird Coal Company, are overruled. The other objections of defendants, namely, the second, third, and fourth of the executors and trustees of the estate of John Barnes, deceased, the fourth of defendant Bird Coal Company, and the second, third, fourth, and fifth of the administrator of the estate of Amy F. B. Schaffer, deceased, are sustained, with leave to plaintiff to amend its bills accordingly within 30 days under penalty of having the bills dismissed.